UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARLOS REA BUSTAMANTE,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al.,

Respondents.

No.  1:26-cv-00710 DAD SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302(c)(17) and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

**A.  Section 2241 Petition**

Petitioner alleges that he and his parents fled their home in Michoacán, Mexico, due to credible fear of imminent death from the Los Callberos Templarios drug cartel.  ECF No. 1 at 8, ¶¶ 47-49.  They entered the United States on September 4, 2022, and applied for admission at the San Ysidro Port of Entry.  Id. at 8-9, ¶¶ 49-51.  After he was interviewed for his asylum claim, petitioner was paroled into the United States through a Title 42 exemption.  Id. at 9, ¶ 51.  On September 1, 2023, Petitioner timely submitted applications for asylum and withholding of

1

removal.  Respondents commenced removal proceedings, entitling petitioner to present an asylum claim consistent with his due process rights under 8 U.S.C. § 1229a.  Id. at 9-10, ¶¶ 55-56.

Petitioner and his family have resided in Delhi, California, since 2022.  Petitioner received a work authorization in May 2024 that is valid through May 2029.  ECF No. 1 at 9, ¶ 53.  He has since held several jobs, including most recently at the Amazon warehouse in Turlock, California.  Id. at 9, ¶ 53.  Petitioner is also studying computer technology and information systems at Merced College.  Id.  Petitioner came out as gay to his family around Christmas 2023.  While they have been supportive, petitioner reasonably fears for his safety if forced to return to Mexico as an openly gay man.  ECF No. 1-1 at 4-5 (Affidavit in Support of I-589 Application, Nov. 24, 2023).

On October 23, 2025, petitioner went to the Immigration and Customs Enforcement (ICE) office in Fresno for a routine check-in.  At the check-in, ICE detained him without notice, explanation, cause, or charge, and transferred him to the Golden State Annex in McFarland, California.  After the arrest, DHS charged petitioner as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection.  ECF No. 1 at 10, ¶¶ 57-59.  Petitioner has complied with the conditions of parole and never committed a crime.  Id., ¶ 65.  Petitioner is still detained at the facility and has been denied a bond hearing.  Id., ¶ 66.

Petitioner raises four claims for relief: (1) Violation of the INA—Request for Relief Pursuant to Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, (C.D. Cal.) ("Maldonado Bautista"); (2) Violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A) (abuse of discretion, 8 U.S.C. § 1226(b) and 8 C.F.R. § 1236.1(c)(9)); (3) Violation of the APA, 8 U.S.C. § 706(2)(A) (not in accordance with law and in excess of statutory authority, 8 U.S.C. § 1226(b) and 8 C.F.R. § 1236.1(c)(9)); and (4) violation of the Fifth Amendment (procedural due process).  ECF No. 1 at 11-14.  By way of relief, petitioner seeks an order directing his release or, in the alternative, an order directing his release unless respondents provide a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within seven (7) days, and at such hearing, afford Petitioner the opportunity to be released on bond.  Id. at 14.

### B. Respondents' Answer/Return

In their answer/return, respondents maintain that petitioner is not entitled to relief as a

member of the certified class action in <u>Maldonado Bautista</u> for the reasons provided in <u>Ore Falcon v. Wofford, et al.</u>, No. 1:26-cv-0181 WBS EFB, 2026 WL 171927, at *3 (E.D. Cal. Jan. 22, 2026). Respondents also argue that petitioner entered the United States illegally and, as such, is an "applicant for admission" who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2).[1] ECF No. 7 at 1-2. Respondents add that petitioner 's prior release in the discretion of DHS did not convey a liberty interest and that he "does not possess the right to freedom from immigration detention in any form other than the form provided by" § 1225(b)(2). <u>Id.</u> at 1-2.

### C. Petitioner's Reply/Traverse

On reply, petitioner renews arguments that he is subject to discretionary detention under 8 U.S.C. § 1226(a). ECF No. 8. Regarding his due process claim, petitioner counters that the court "'need not determine whether § 1225 or § 1226 applies in this case' because Petitioner 'acquired a liberty interest in his continued freedom when DHS elected to release him in [September] 2022,' and his liberty interest exists 'regardless of the applicable detention scheme.'" <u>Id.</u> at 3 (quoting <u>Cajina v. Wofford</u>, No. 1:25-cv-1566 DAD AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025)). "In short, because DHS elected to release him in 2022, the Petition should be granted, full stop." <u>Id.</u>

### II.     Applicable Detention Statute

The statutory and regulatory framework governing petitioner's immigration proceedings, his release on supervision, and the subsequent revocation of parole is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." <u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1057 (9th Cir. 2008).

It is undisputed that DHS released petitioner in September 2022 after he applied for admission at the San Ysidro Port of Entry. But the record does not resolve whether DHS paroled petitioner pursuant to 8 U.S.C. § 1226(a) or the separate humanitarian parole procedures at 8

---

[1] As explained in the petition and corroborated by petitioner's exhibits, petitioner did not enter the United States illegally but was instead processed lawfully at the San Ysidro POE through a Title 42 exemption process. ECF No. 1 at 8-9.

U.S.C. § 1182(d)(5)(A).  This is a crucial fact for petitioner's statutory claims because a grant of humanitarian parole under § 1182(d)(5)(A) does not foreclose that he is an "applicant for admission" under § 1225(b).  See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (noting applicants for admission may be released on humanitarian parole "regardless" of whether § 1225(b)(1) or § 1225(b)(2) authorizes their detention).

However, the undersigned agrees with petitioner that, given his prior release, the procedural due process analysis would be the same even if he is subject to a mandatory detention statute.  See Cajina, 2025 WL 3251083, at *3; Chavarria v. Chestnut, No. 1:25-cv-1755 DAD AC, 2025 WL 3533606, at *5 n.3 (E.D. Cal. Dec. 9, 2025) (declining to resolve statutory basis for the petitioner's detention after determining petitioner was paroled under § 1182(d)(5)(A) and likely to succeed on the merits of due process claim).  Accordingly, the undersigned will not address the statutory basis for petitioner's detention and instead turn to his due process claim.

### III.   Procedural Due Process

#### A.  Legal Standard

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews applies.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206–07 (9th Cir. 2022).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the

4

risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### B.  Liberty Interest and Mathews Factors

Respondents' argument that petitioner did not acquire a liberty interest when DHS released him on parole in September 2022 is unconvincing.  "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release."  Calderon v. Kaiser, No. 25-cv-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting Morrissey, 408 U.S. at 482).  Thus, "[i]n this case, as in many others to have recently come before this court, petitioner acquired a liberty interest in his continued freedom when DHS elected to release him[.]"  Cajina, 2025 WL 3251083, at *3 (finding petitioner acquired liberty interest when released on own recognizance under 8 U.S.C. § 1226 and collecting cases).

Turning to the Mathews factors, petitioner has a strong private interest in his continued parole.  "It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status.  Freedom from imprisonment is at the core of the Due Process Clause."  Doe v. Becerra, 787 F.Supp.3d 1083, 1093 (E.D. Cal. 2025) (citing Zadvydas, 533 U.S. 678).  Petitioner's pursuit of employment and higher educational opportunities further strengthens his private interest.  See J.E.H.G. v. Chesnut, No. 1:25-cv-01673 JLT SKO, 2025 WL 3523108, at *11 (E.D. Cal. Dec. 9, 2025) (finding private interest in remaining on parole where "Petitioner pursued gainful employment, built relationships with her family and many in her community, and kept a clean criminal record").  Accordingly, the first factor strongly favors petitioner.

The second factor, risk of erroneous deprivation, also tilts toward petitioner.  "Once a liberty interest is established, the question is whether process –a hearing –would lessen the risk of an erroneous detention. Where an individual has not received a bond or redetermination hearing, 'the risk of an erroneous deprivation [of liberty] is high.'"  Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) (quoting Singh v.

Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)).  The risk is particularly high here because respondents do not dispute petitioner's compliance with parole conditions and "instead rest[] on Section 1225's mandatory detention provisions as a matter of law."  Id.

Finally, the government's interest is low, and the effort and cost required to provide petitioner with procedural safeguards are minimal.  See Perez, 2025 WL 3187578, at *4; Pinchi v. Noem, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025) ("Indeed, it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.").  Accordingly, the third and final Mathews factor also weighs in petitioner's favor.

Based on the above application of the Mathews factors, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondents be ordered to release petitioner immediately under the previously imposed conditions of supervision.  Having found that the Fifth Amendment Due Process Clause supports the granting of the petition in this case, in the interests of judicial economy, the undersigned declines to reach petitioner's INA and APA claims.

### CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be required to immediately release petitioner from detention under the previously imposed conditions of supervision.

3. Respondents be enjoined and restrained from re-detaining petitioner unless they provide petitioner with written notice before a pre-deprivation bond hearing to be convened by a neutral decision maker, and demonstrate by clear and convincing evidence at such bond hearing that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. At the time of release, Respondents be ordered to return all of petitioner's documents and possessions.

5. Respondents be ordered to file a notice certifying compliance with the above provisions within two (2) days of the adoption of these findings and recommendations.

6. Petitioner's motion for temporary restraining order (ECF No. 9) be DENIED as moot.

7. Judgement be entered in favor of the petitioner and the Clerk of the Court close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 13, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE